We will hear argument first this morning in Case 23-108, Snyder v. United States. Ms. Blatt. Mr. Chief Justice, and may it please the Court, Section 666 applies to 19 million state, local, and tribal officials and anyone else whose employer receives federal benefits, including 14 million Medicare-funded health care workers. Congress did not plausibly subject all these people to 10 years in prison just for accepting gifts, especially when federal officials face only two years for accepting gifts under 201C. 666 punishes corruptly receiving anything of value intending to be influenced or rewarded. Corruptly intending to be influenced covers classic bribes where officials get upfront payments in exchange for official conduct, while corruptly intending to be rewarded covers bribes paid after the fact and to officials who aren't actually influenced. The government argues corruptly under 666 means wrongful, immoral, depraved, or evil, but the government tried this case and countless others on the theory that corruptly just meant knowingly. Regardless, the government's new definition is implausible and uses the word corruptly, and for good reason. The government can't tell you what gifts are corrupt. What gift is too much for the doctor who saves your life? Is pornography an immoral gift? The federalism and due process implications of the government's view are gobsmacking. All states prohibit bribery, but localities and states take infinite approaches to gifts and outside compensation. Affirmance would let federal prosecutors second guess all of these judgments. Meanwhile, state and local officials will have no way of knowing what gift would subject them to 10 years in prison. Remember, extensive guidance tells federal employees that accepting anything over $20 is a crime. It would be downright Kafkaesque to subject state and local officials to a standardless and severe regime where federal interests are at their weakest. I welcome questions. Ms. Blatt, if I find a lost pet and return it to the owner, and the owner is grateful and gives me $10, that's a reward, right? Even though nothing else happened in advance between the owner and me. So yes, divorced from, you know, a crime that makes it a corrupt, corruptly giving something of value, intending to be rewarded. The word reward, just divorced from text of a statute, context, common sense, at least in this case. Sure, reward can mean both a bribery and a quid pro quo bribery and a gratuity. And we think it's very significant in all the statutes that use reward to mean gratuities. They're vastly different in four respects here. They all say when reward is used to mean gratuities, these are cited at page 31 of our brief, they make clear that no quid pro quo payment is required. They say you can't receive any fee or compensation. Also, there are 13 gratuity statutes identified in the brief. Virtually all of them have no express mens rea whatsoever. They have vastly lower penalties, and they almost exclusively apply to federal officials. And I think that just highlights that gratuity statutes are generally prophylactic rules where the government has a direct interest. And at least here, to use corruptly in a gratuity statute would make the statute a unicorn. It literally has no accepted meaning. It doesn't exist in any other statute. I don't think anyone knows what a corrupt gratuity is. But I would think that demanding mens rea would cut against you. In other words, if you add in demanding mens rea to the statute, one will have less fear that the statute is going to be applied in an overbroad way. So you're using that on your side, but I would think that it's really the government's argument. No, mens rea can't help you if it's standardless and has no meaning and just leaves it up to a jury and I guess federal prosecutors. Your view is dependent on the vagueness of the standard. If we just knew that it was a serious, a demanding mens rea standard, then it would cut for the government? No, it's not just that it's vague. It's also unheard of and ahistorical. And I just don't think the government story holds up. The government story is, hey, in 1986, we had this gratuity language and we add the word corruptly. But that, of course, is not true. You had a statute that was identical to section 201C that was a gratuity statute. And the government, the Congress did not just sneak in the word corrupt. They deleted that statute in toto, hook, line, and sinker, and added corruptly intending to be influenced, rewarded in a way that looks much more like the 201B bribery statute. I'm sorry. I thought the original 666 covered gratuities. And what Congress then did is instead of copying the bribery statute 201A, it decided to copy the gratuity statute 201C. So if they intended bribery, why didn't they just copy the statute that meant bribery? So in 1984, the statute read, you can't give or accept anything for or because official conduct. And that is the gratuity statute. That language got deleted in toto. Well, but that's the point. Why not borrow then the language from 201A, from 201B? I'm sorry. 201B. B instead of C. I said A. And our point is it looks a lot like more 201B, which has the corruptly intending to be influenced. And I just don't think the story is that. But they have that language, but they chose something broader and different. And so I don't understand. I don't think it's broader at all. And let me see if I can be clear on this. 201B is very different. The court in McDonald said, you can actually be convicted if you don't have any intent to be influenced under bribery. But under this statute, 666, the government... They didn't have McDonald in front of them. So I don't know what that has to do with anything. They had clear bribery set language in 201B. And instead, they chose something closer to the gratuity language of 201C. It doesn't look anything like 201C or any other gratuity statute in the U.S. Can I go to the disparity that you were talking about? 666, when it was clearly a gratuity, had 10-year statute penalty. So it was always disparate from other statutes involving federal officers. So what do I take from that? Meaning you say that Congress couldn't have intended to treat state from federal officials differently, but it always did. It did before it amended 666. I wouldn't consider two years always. It was a short-lived statute that was immediately deleted. And I don't even know if the government had any prosecutions. But if I could just finish my answer on what I don't think the government has a response to, if a jury finds that an official was not influenced because he would have taken the same vote anyway, the jury has to acquit if the statute had just said intending to be influenced. And so intending to be rewarded is absolutely critical in this statute. And that is not the case of the federal bribery statute. This statute actually requires either an intent to be influenced or an intent to be rewarded. The other thing I can say about the disparate penalties is that no other statute in the U.S. Code puts gratuity on par with bribery. And the government, under the government's view, you'd never, ever have to either charge, must left prove an intent to influence, because under their view, any payment that is an intent to reward under their reading renders any need to prove intent to influence completely superfluous, irrelevant, and unnecessary. And that is an outlier in history and in the U.S. Code. Why do you keep saying that this doesn't look like anything else? I'm looking at 215, and it uses almost exactly the same language. It has corrupt, corruptly, it has giving, offering, promising anything of value to a person with the intent to influence or reward. When I look at the legislative history of 215, it says, or 666, says that it's modeled off of 215. And 215's legislative history says it includes gratuities. So I'm just trying to understand what you mean about this not looking like anything else. Let me take on section 215. So you're right, the wording is quite identical, and the only court to address the issue has held 215 is a bribery statute. But on the legislative history, to be sure, a footnote in the legislative history of section 215 mentions that that statute applies for gratuity. But if we're going to rely on legislative history, I'll take the footnote in the legislative history of section 666 itself. When it references the section 215 statute, it only refers to bribery. But now we're really going to be warring over footnotes in legislative history, I'll take ours. But the other thing I would say about 215, which is extraordinary, is that there is a provision, I think it's 215D, that says orders federal agencies to give guidance. So every federal agency has issued extensive guidance to bank officials. There is massive guidance, of course, to federal officials. There is no such guidance. And had the government issued guidance, it would just make the federalism implications all the more bizarre. So bank officials are told, here's what you can and cannot do. And there's no... And are they told you can accept gratuities in the 215 context? The guidelines which were promulgated after section 666 was passed. But again... I'm sorry, what's the answer? The guidelines do assume that 215 applies to gratuities. Okay. And that the language is identical to 666, correct? Correct. But the only court, no court has held that section 215 applies to gratuities. It's got a 30-year sentence. And even if you did think it did, I would say the title at least mentions gifts. The legislative history says it means gifts. And there is a provision for guidance. None of those three things are true under section 666. The title says bribery. The legislative history only mentions bribery. And there's no guidance. And it is truly unthinkable, unthinkable that officials would not know what type of gift is corrupt. Even a gift basket. I don't know where on the Harry and David menu the gift becomes corrupt. Hold on. Go ahead. It ends at 319. It starts at 1999. Ms. Blatt, can I ask you... So you're referencing some of the horribles. And your brief points out the Harry and David gift baskets, the tip, the gift card to your garbage collector, that sort of thing. Can you point to any actual prosecutions or convictions even that have pursued those kinds of... Just two in our reply brief. And I don't know if they reached a conviction, but somebody was charged for soliciting donations to a sports league. And then another defendant was charged for having plaques and luncheon for female judges. And that was considered it. I mean, there's just legions of cases that say you're not going to interpret a statute with crazy breath on the trust me assumption of federal process. Just one other question. So federalism breath aside, you also point out that for private entities that take federal funds and this would also channel into them. Apart from the pandemic money, are there other reasons to think that federal funds would pull private entities into this? Yes. You held in Fisher that it covers Medicare, which is one of the largest industries in this country. It covers every nurse, doctor, orderly, anyone in the hospital. It covers any grantee. And I think we gave in the brief, literally Google government grantees and there's just tons and tons. Lockheed... I'm sorry. Doesn't the nexus requirement get rid of most of this? The tax collector, um, the person who just says, thank you. Generally the nexus requirement says that the gratuity must be quote in connection with any business transaction or series of transactions of a covered entity involving anything of value of 5,000 or more. The trash collectors not having anything to do with 5,000 or the contract. The doctor who removes your wart fine, but the doctor who takes your gallbladder out or does your face like my plastic surgeon. No, that's worth over 5,000. Seriously. I'm not even joking. Snow removal is worth over 5,000. Writing a letter for your kid to get into college. That's priceless. I could go on and on and on. But it still has to have a nexus to that contract. Yes. And people give gifts all the time to nurses after an operation. That is a crime. I thought that the government had actually pursued prosecutions below on the theory that the $5,000 in connection with the business requirement could be satisfied by pointing, for example, to the police officer's salary was more than $5,000. The government took an outrageous view expansively, which is why they use 666 over 201, because they didn't think it had to be linked to an official action, but they did fancy footwork in their brief and says, no, no, we won't do that anymore, so we'll keep it closer to 201. But no, that's why they love 666. I thought there was, in fact, an affirmed conviction in the Seventh Circuit, the United States versus Robinson alone. You can ask them because I think they're a little cagey on how much they will give on what a business or transaction is. But even assuming it's tight, it doesn't take that much to do snow removal that's worth over 5,000 or the police officer who helps find your kid who's kidnapped. This is like government officials and health care workers do stuff worth over $5,000 every day, every second, every minute. Do you think that the horribles also apply to the bribery side of the statute? I mean, what strikes me about the statute is the number of people that it covers. But you can imagine all of your horribles being done on the bribery side. You know, I give the orthodontist for my kids hockey tickets so that and we kind of it is a quid pro quo so that, you know, my kid gets the best appointment or something like that. I mean, you can imagine a whole lot of cases where even though there's an explicit bribe, it also seems like, really, we're criminalizing that. So I'm just wondering whether the horribles only apply to gratuities as opposed to there are horribles in the statute because of the kinds of people it applies to. No, I disagree, Justice Kagan, for this reason. Under Section 201, there's a 15-year sentence for bribery. Government hates to have to prove a quid pro quo. And there's a two-year sentence for gratuity where it's really easy to get a water bottle plus a mug and it's over $20. There's vast, vast difference. If it's that no big deal, let the government just prove quid pro quo. Just let them. It's much more damaging. The government has a direct interest. If you have to prove there was an influence on your official conduct, at least the government says it impacts the federal program. Here they have six different ways where they're defining corrupt. If it's not benign, if it was against the employer's rules, if it's against common sense rules, if you're conscious of wrongdoing, which I have no idea what it means, if it could skew your official decision-making. It is very different to say, and I do think the fact that all states prohibit bribery cold. And not all states, some employers in some localities allow gifts. They just do, because they're not corrupt. Unless it's prophylactic. How would you define corruptly if you had to in this particular provision? Well, we would win if it was defined under half of it violated your employer rules, common sense ethical rules, or consciousness of wrongdoing. I don't know what benign means. I don't know what immoral means. I mean, the government says we waived, but they don't tell us what we should have asked for. They never spelled out what that instruction was. Just on that, I thought you did ask for jury instructions that would make clear that an after the action agreement would require a quid pro quo. J18 objects to the definition of corruptly on J28 by saying, very clearly laying out the sine qua non of bribery is that quid pro quo payment, and the jury would have to convict if it only found a gratuity. What the government is trying to say is that we should have said something other than the way the government's prosecuted every other 666 case on just a knowing theory, and they've said six different ways what that would look like. And if you charge, again, I'm sure you will ask them what the jury should be charged, what common sense ethical rules are. I mean, the restaurant example alone, I don't know where it's, I'm pretty sure Chipotle would be okay, and Little Washington wouldn't, but ask them about Cheesecake Factory. Well, I'm not going to ask them about the Cheesecake Factory, somebody else may, but I'm going to ask you a little bit more about corruptly, and the mens rea that you think it should import here, putting aside the jury instructions and the debate over forfeiture. You mentioned consciousness of wrongdoing, which the court I think that you have to know that it's unlawful. It's one of those rare statutes where perhaps ignorance of the law is a defense, if you will. What do you think of that? No, that's some other case. Corruptly has a very, very specific definition with bribery. It cannot possibly mean one thing for bribery and something else in this statute. It clearly means quid pro quo. Bribery has always had both common law, historic, 201. Corruptly means quid pro quo in this context. I think when you have Arthur Anderson official proceedings, document destruction, what have you, corruptly can mean all kinds of things. It makes no sense what you're saying to me. Here's a case in which someone is, that's the allegation, demanding money, gets it, basically for no services, spends his time giving two or three different reasons and services that he series of meetings or phone calls, texts, et cetera, before the second contract is awarded between these people. At some point, can't the jury see that as a demand for payment for services? And you're giving no definition that would cover that kind of behavior. I think that's different than the situation the chief posited. I find someone's wallet and I tell them, I'm not giving it up to you unless I get a tip. So I want half the money in the wallet. It's none of the federal government's business. If a local official is doing nothing wrong with state and local laws and complied with all local laws, most of their brief has nothing to do with their theory. Their brief is somehow, there was improper steering by his buddy, who's now the head of sanitation and trash, which is a little bit ironic, but their theory... You are suggesting that the federal government can't say there is something wrong with demanding payment after the fact for an official act. The government has not, sorry, Congress has not criminalized gratuity against state and local officials. It's not a crime. It's not a crime for state officials to run around the country with respect to federal contracts and say, I voted for X, now pay me. It's not a federal contract, but if there's bribery... I'm sorry, a state contract. If the government thinks there was a quid pro quo, which they did here, they did allege and try to argue to the jury there was bribery, but you're making it a case where... I'm asking a simple question. It's all right, according to you, or it's wrong for federal law to attempt to take the situation, which is alleged here, that demanding payment for official acts is wrong. You keep saying demanding. If he had asked to please give me my GoFundMe money for my kid's cancer surgery, I think in your view, that's a crime. And I'm saying Congress could have possibly intended that official in 10 years, but that's the problem with your example. Is the question whether it would be wrong for Congress to criminalize that or whether, in fact, Congress has criminalized it? Yes, it's the latter. It's the latter. And why isn't the language cover? I mean, I understand we're all thinking about this in terms of gratuities, and that opens the door to all of the relatively benign examples that you sort of showing thanks for doing services. But the statute does not use the word gratuities. In fact, the statute uses terminology that's very similar to what Justice Sotomayor just said, right? Someone who corruptly solicits or demands, and I'm skipping here, anything of value intending to be rewarded. And those are the facts that the government is at least alleging in this case. And corruptly is completely a foreign concept to gratuity, and it's a very familiar. No, but I'm not. Set aside gratuity. I'm just looking at the statute. Why aren't the facts that the government alleges here fitting entirely with the statement, the text of this statute? Because the plain language of reward can mean bribes. And it has been used. And it can't mean after the fact seeking a payment for something that you've done officially. Rewarding can plainly mean bribes to officials who aren't actually influenced. You give me money, and either you're never going to take the vote, or you couldn't take it anyway. It also applies to after the fact payments. And if I can just say one other thing, because you say on reward about corrupt, $1,000 a bottle of wine. $2,000 a bottle of wine. But I guess if the person is demanding it as a result of something that they've done, it would be the same scenario. It's the same statute that applies to the giver. So you and anyone else in this room who gives an expensive bottle of wine to a nurse in connection with a $5,000 surgery. Is she demanding it for having done something to me or in my family? You have to divorce 601, the giver to the taker. I mean, yeah, the giver to the taker. That's the exact same wording. It applies to anyone who gives with an intent to reward. That's the plain language. And I think in your view, you'd have to draw a line between the two-buck Chuck at Trader Joe's and the wine that goes up to $500,000. And I don't know where the government's line is. There is no drop-down menu on Amazon for mens rea. There are 13 gratuity statutes. None of them are like this. They have no mens rea, because they're just prophylactic bright line rules. You can't get that compensation, which is why that is the federal rule. You get even a dollar. It is a crime. Regardless of mens rea, and there are 11,000 pages of guidance to make sure that when you're a federal employee, you don't go to jail for two years. I don't know what every single person... So what is rewarded doing in this statute? Because basically you've defined it as bribery, and we have intending to be influenced. So what is the work of rewarded? Two critical things. And the government has a response. It's not a good one on one of them. They have no response to my first point. It takes the issue of timing and causation off the table. And where they don't have a response is on causation. The statute, if it just said intending to be influenced, a jury would have to acquit if the jury found the person wasn't influenced. Like a gun, I don't know, take a pro-gun or an anti-gun person who said... I don't understand that. It says intending to be influenced. It doesn't say you have to actually have been influenced. So? Well, I mean, isn't a bribery you're intending to be influenced? Okay. No. If the jury... If you said I wasn't influenced, I would have taken the vote anyway. The jury would have to acquit. I wasn't influenced. I didn't even intend to be influenced because I told my God, my wife, and my son that I was going to vote that way anyway. I had no intent to be influenced. And on our second one is after the fact. Now, I agree you could stretch the English language, but I just think it refers to more naturally an upfront payment before the vote is an intent to be influenced. And I'll do it. And then after the vote is taken, just more naturally refers to reward, which is what the Fifth and First Circuit found, was that it totally takes timing off the table. And so corrupt is doing all the work of quid pro quo and intending to influence and rewarded is doing the work on either the timing of the payment or the way you intended. Thank you, counsel. Justice Alito, anything further? Mrs. Kagan? Mrs. Worsley? I know we discussed this in Sabri, but I'm just curious your thoughts on, I guess, Justice Alito framed as the first question. What are the limits to what Congress can do to federalize state substantive criminal law here? Yeah, so Sabri is definitely in the context of bribery. And so the question would be if the section, sorry, the 1984 version just criminalized gratuities and said for because of Official Act 10-year penalty, and you would have a clear statement and the clear statement under Bass to upset the federal state balance and you have a pure Sabri question. I mean, it's tough. I think what the government would say, the only thing they intimated in their brief is that sometimes the gift could be so bad, I don't know, a Ferrari, that it might skew your official decision making. And the problem with that is they don't have an answer. What about the toy Ferrari? I mean, so they still have the vagueness problem, but I think their argument would be, although it's way less, it's certainly much weaker than bribery. I think they're skewing is the way they would get around the sort of, I guess, whatever you call it, spending clause authority or Article One authority. But it was bribery. It was definitely bribery was at issue in campaign finance and with the connection with the federal program was clearly a bribery quid pro quo. And here we have a very different scenario with gratuities. And did Congress really did it clearly need to displace all state law? Clear? It's not clear to me. Not when it's just looks nothing like any other gratuity statute in history or on the books today. Thank you. Justice Kavanaugh, you've suggested a few times that state and local governments regulate gratuities of state and local officials. Can you give us some more color on that? Is there a disparity? You know, some jurisdictions will say up to $50, others? Yeah, it's infinite. Some of them will say, give the gift back. They don't put you in jail for 10 years. I mean, the government, I mean, yeah, no, there's an infinite here. It was not even alleged that Portage and Indiana have extensive ethical rules. There's no allegation that the petitioner did anything in violation of those rules. And although the federal government has its own, every employer has different rules. Even in the banking context, DOJ is supposed to work with the bank and make sure that it's copacetic. And even then DOJ says, we may second guess the banking rules if we find them unreasonable, but they're supposed to at least work out ahead of time. But there's just, there's a lot of cities and there's a lot of states and I don't think most states even have gratuity laws. Thank you. So they're just making something a crime that's not. Justice Jackson? Yeah. So if you're right, and there's a distinction between bribes and gratuities in the way that you're positing it, I guess we have a statute in which Congress is intending to prohibit an official from going to a company ahead of time and saying, pay me $15,000 and I will steer the garbage truck contracts to your company. But Congress would not have intended to prohibit that same official from steering the garbage truck contracts to the company. And after the fact, going to them and saying, okay, give me $15,000. And I guess I don't understand how you have a statute that is rationally drawing a distinction between those two scenarios. Oh, Sun Diamond, Justice Scalia goes on and on and on. Like his, one of his favorite cases ever, he just goes on and on about the big difference between a bribery. That's where you pay the money in exchange and a gratuity that the action is taken is after the fact. 201 made that distinction. And so the other thing I would say, and you can ask the government, the government's position does not depend on steering. This could have been the best garbage truck contract in the history of the planet, but didn't like the $10,000 or didn't like the type of gift. They say it's okay to give coffee and donuts to the police who work around the clock. Well, what about the police who coerced a confession? Is that corrupt? Same gift, same donut. The government's theory to the jury has nothing to do with the steering. It's just, they want to do that to make the client look bad. It is simply, you got something of value after the fact because it related to official conduct, which it doesn't depend on any misconduct at all by the official. And again, Sun Diamond is literally all about the difference. And even in Sun Diamond, this court went crazy to make sure federal officials were protected because two years was too long for federal officials to go to jail for gratuity. Thank you, counsel. Mr. Chief Justice, and may it please the court. The federal government needs to ensure the money it appropriates to local governments for public benefits is allocated in a way that maximizes the benefits to its citizens, not the rewards for local officials. Congress therefore enacted section 666 to bar officials from corruptly accepting payments with the intent to be influenced or rewarded in connection with their official duties. Petitioner asks this court to weaken section 666's protection for the public fisc by holding that a person does not violate section 666 when he corruptly solicits a payment with the intent to be rewarded, unless he has also agreed to accept the reward beforehand. But that requirement of a beforehand agreement finds no basis in the statutory text. The plain meaning of reward readily covers a payment given in return for an official action or decision that is already complete. So a police chief who sends his officers to foil a burglary at a store and then demands the store owner pay him $10,000 for his officer's work, he acts with the intent to be rewarded. A safety inspector who issues a building permit for a dangerous project and then solicits a $30,000 payment acts with the intent to be rewarded. And a mayor who steers a contract for a particular business and then asks that business to pay him $13,000 for the contract acts with the intent to be rewarded, whether or not the contractor agreed to give him the reward before the contract closed. Petitioner's argument to the contrary ignores both the plain meaning of the term rewarded and the statutory history. In 1984, Congress enacted a flat bar on the acceptance of bribes and gratuities. It was In 1986, Congress narrowed that bar to carve out a subset of only the most culpable gratuities by adding a corruptly mens rea and an express exception for bona fide salary and benefits paid in the ordinary course of business. Now Congress's textual fix worked. Petitioners haven't pointed to any real world examples of section 666 prosecutions for the sort of innocuous gift giving activity that occurs in the ordinary course of business. And I'm happy to explain why the two examples in their reply brief really just aren't what they're describing. But the court should therefore reject petitioner's invitation to artificially narrow the reach of section 666. I welcome the court's questions. Counsel, under your theory, there are two offenses in 666, the gratuity and the bribery. And gratuity is really just a bribery without a quid pro quo, right? So first of all, there's a single offense, corruptly accepting a payment, and then there are two means of committing that offense, either intending to be influenced or intending to be rewarded. So it's one offense, the corrupt acceptance, and then two different means. And you're right, they overlap a lot of times when you're accepting a payment. Well, I don't know if they overlap. It seems one is a lesser included offense than the other, right? Gratuity, why isn't the bribery thing just surplusage? You just show a gratuity, and as I said, it's just kind of bribery without the quid pro quo. That's all you need to show. No, there are going to be situations where somebody is going to accept a payment intending to be influenced without intending to be rewarded. So that's going to happen when somebody accepts a bribe and says, yes, this $10,000, it's going to influence me in making this decision, but I haven't made up my mind yet. And maybe they turn to someone else and say, hey, you know, somebody else gave me $10,000 to influence me. Sure, you know, $20,000 might push me in another direction. At that point, the person gets $20,000 and does what the second person wanted. Now, in the second situation, I think that is somebody who is both intending to be influenced and intending to be rewarded, because they're going to do something for that $20,000. But in the first situation, there is nothing to be rewarded. So they are intending to be influenced, but they haven't made a decision. They haven't taken an act. So they aren't intending to be rewarded. But that's a strange hypothetical, right? It doesn't really happen in the real world. I'm not sure. I mean, I guess what I'm suggesting is that you have to work pretty darn hard to get out of the problem that the Chief Justice suggested. No, I don't think so, for two reasons. First of all, I don't think it's so far-fetched to imagine a mayor who says, kind of, you know, I'm taking bids on the contract, and hey, it sure would help if you put a payment, you know, you offered me something, too. And then I think you are going to have a few different payments happening with the intent to be influenced but not rewarded. But the second point is that I think this lesser-included offense comes from the relationship between 201B, which covers bribery for federal officials, and 201C, which covers gratuities. And the 201C offense is a broader offense. It's the for or because of language. There's no corruptly mens rea. There's no express exception for bona fide salary and compensation. So there, I think, it actually can be described as a lesser-included offense. But here, it's not that all gratuities are covered within the rewarded, because, of course, the other restrictions within Section 666 still apply. So it has to be accepted corruptly, and we have the exception for... Keep going, sorry. Oh, no, I was just going to say the exception for bona fide salary. Well, I think the problem you have is what does corruptly mean? So I think Arthur Anderson described corruptly, it said it has to be corrupt. So that means wrongful or evil or immoral. So there's a $100 Starbuck gift certificate as a thank you to the city council person for working on a new zoning reg. Is that corrupt or not? So, no, and let me tell you exactly why. How about a $500 one? So I think it would be helpful to set out what the guidelines are going to be here, because when there's a corruptly mens rea, what you usually see in the jury instructions, sometimes it says consciousness of wrongdoing, so you have to know that what you're doing is wrong. But sometimes what the jury instructions do is isolate what is actually wrongful, what is obviously wrongful about this conduct. So I think when we're talking about corruptly in connection with rewards, you have to isolate what's wrongful. And what's wrongful is when it appears that the government is for sale. What's wrongful... You're changing the hypothetical. The hypothetical is the actions taken and a citizen gives a thank you. And it could be a gift card to Starbucks or it could be tickets to a concert or game and just drops it off to the person. Thank you for all your hard work on this issue. Appreciate you. So I do not want to get away from corruptly. I also want to point out that, of course, there's other limitations within the statute. So if the business or transaction that's being rewarded isn't worth at least $5,000... I just want to make sure because I do think, for example, in Sondheim and Justice Scalia said that requiring this connection with a particular act is going to eliminate innocuous gift giving for federal officials. But you can't... I'm going to press on this. What is innocuous and what is not? And just as important, how is the official supposed to know ahead of time, oh, the $100 gift certificate's okay, but the larger one's not? Or the set of books or the framed photo? So again, I think there are three circumstances where the official is going to know that what he's doing is obviously wrongful. The first one is where he took the public act with the intent to be rewarded. Collapsing two different things. Counsel, you're collapsing two different things. That's not my hypothetical. My hypothetical is the person, the official knew nothing about the potential for the gratuity after the fact. So that's going to make it harder for the government to prove corruptly. But there are two other circumstances. Why? Because corruptly has to get at what's obviously wrongful in the statute, which is where you are performing public acts for private gain. Counsel, I'm sorry to interrupt, but I am going to interrupt there because I think the questions and the ones I'm interested in have to do with mens rea on corruptly. And I think that's what Justice Kavanaugh is getting at. So put aside the you say corruptly carries with it some mens rea. What is it? Consciousness of wrongdoing. So you think the defendant has to know that what he's doing is unlawful? Oh, or wrongful. He doesn't have to know about this. Wrongful. Or wrongful. Where does that come from? That comes from Arthur Anderson. Well, the consciousness of wrongdoing usually means that I know. I mean, wrongdoing is defined by law usually. Right. But you're saying, you're saying, no, it doesn't. He doesn't have to know that it's unlawful. He has to know that it is unlawful or fill in the blank. Wrongful. And I think sometimes actually so unlawful is usually your rights going to get you there. And here I think we have someone who did everything he could to hide that he was getting this money and said that it was a consulting fee. So you have a lot of evidence. How do you know it's wrongful if it's perfectly legal? Well, so it was not. I mean, is it a sin? Are we now talking about something that, you know, something that would be a venal sin or does it have to be a mortal one? I want to ground us in the facts of this case. So I think it's important here to establish that the Indiana Code actually bars giving a gratuity to a public official. The Indiana. I'm not asking about Indiana. I'm asking about what the government's position is on corruptly and mens rea. And you say it has to be unlawful or wrongful and wrongful in what sense? So, again, I think what we're talking about here is wrongful in the sense that Arthur Anderson said evil, corrupt, immoral. And sometimes that's immoral. That is what this court said. So a gift of pornography, as your counsel friend on the other side pointed out in her opening, is would that count in the government's view? It needs to be wrongful in the way in the way that the statute is targeting. So here again, what the statute is targeting, the obviously wrongful conduct that the statute is targeting is taking public acts for private gain. So where, again, and I'm just going to give you the three circumstances. That defeats your whole theory. I'm sorry, because if the public act was done, completed, we're done with the new zoning reg. We're done with the new school board decision. And then the gratuity, the gift, the thank you arrives. You're still going to prosecute those cases as corrupt under your theory of what corruptly correct. We're one of three circumstances. So that means where you haven't taken the public action for private gain. No, I think that's where the problem is coming in. So here, for example, imagine that the official just knows that the Buha brothers, they pay big rewards to people who give them contracts. So what he decides to do is award the contract to the Buha brothers. Afterwards, he's going to ask for the payment. That is corrupt. The facts of this case are great in that sense for you to respond to the question, but there are 19 million employees who are going to wonder about the thank yous. For all of those employees, the government is going to have to prove corruption. So if they can't prove that the person actually did, and let me get out the other two, because there are two others. If they can't prove that the person actually took the act intending to be rewarded, which gives you corruptly, they can also sometimes prove that by taking this payment, let's say it's $100,000 for having won a case. In the future, the person is going to be trying to win cases to get the money rather than for in the interest of the public. And then there's also going to be, with certain payments, it's just going to be clear that if the public official takes this, it's going to look like the government is for sale. Does this provision apply to campaign contributions? Section 666 applies to campaign contributions. Under McCormick, there needs to be a quid pro quo in the campaign context, pardon me, in the campaign contribution context, so the government does not prosecute where there is a bona fide campaign contribution. How does that fit into the statutory language? So what we've taken it as there would be an ad as applied constitutional objection if we were trying to prosecute a campaign contributions on a, sorry, bona fide campaign contributions on a pure gratuity theory. And sorry, if I could just get back again. How about this? I mean, this statute applies to more than government officials. It applies to pretty much every hospital. It applies to pretty much every university. So let's say a billionaire patient comes to a hospital and gets extra special treatment. He gets appointments when nobody else would get it. He gets surgery scheduled when nobody else would. And it's all done because everybody knows he's a billionaire patient, and they're hoping that he'll give an eight-figure gift to the hospital. How about that? Does that fit? So it needs to be, we walk through the statutory requirements. There needs to be the acceptance or the solicitation of money in connection with particular business or transactions. Well, they're definitely going to accept the eight-figure gift when it comes. Are you talking about they're on the promise of this eight-figure gift? No, I'm just saying they treat him really super nicely because they're very hopeful and that he's going to recompense them for all the special consideration that they've given. Does that fit or does it not fit? So the government is going to have to prove that accepting that reward would be corrupt. And a lot of people do not think it's good to give super rich people better health care than not so super rich people. So I could see a jury saying that's pretty immoral, but probably every hospital in America does it. Well, the hospital has to have consciousness of wrongdoing. So it's what the hospital thinks that matters there, right? The hospital has to understand that accepting that money, they are committing wrongdoing. But there's a jury that's going to decide whether they're committing wrongdoing or not. And a jury might say that sounds pretty corrupt. And all I'm suggesting is that given that this statute applies not just to government officials, but to pretty much like every important institution in America, I mean, that seems quite extraordinary that when you do stuff, hoping, thinking it might earn you a big gift, even if it's just for the institution, not to put in your own pocket, that that would land you 10 years in prison. Let me say, respond to that in two ways. First of all, under Section 201C, the federal government officials are undisputedly bound by these sorts of requirements with no corruptly mens rea. And in Sun Diamonds, this court said that requiring a tight connection between the reward and a specific official act, or here you would say specific business or transactions worth more than $5,000, that was going to eliminate many, many of these cases. And I don't think that we haven't, again, Petitioner isn't here pointing to a mountain of cases where this has gone horribly astray. So Section 201C does it for government officials without the corruptly. I'd also note, and I think you were pointing this out earlier in the call with Petitioner, that it's not going to get us out of this problem to just grasp on a textual beforehand agreement, because all that has to happen is that that rich patient says to the doctors and nurses, hey, if you treat me well, there's going to be a nice big gift for the hospital at the end. And then the beforehand agreement requirement just isn't going to do anything. You said the friend on the other side hasn't pointed to a lot of examples in the real world, but we've had several cases where we've made the very clear point that we don't rely on the good faith of the prosecutors in deciding cases like this. That's right. And in 1986, neither did Congress with respect to local and public officials. That's why it added the corruptly mens rea, which has to be proved to a jury. And that's why Congress added an express exception for bonafide salary for compensation in the ordinary course of business. So Congress really did confront all of the concerns that I think the court is reflecting today. And it said, we recognize we do not want to just cover innocuous What is your answer to Justice Kagan's hypothetical? That's a question that would be submitted to the jury and the jury would have to decide whether the donor acted wrongfully and the hospital acted wrongfully, right? They would have to prove that the hospital understood that it was wrongful to accept that payment. Now, again, that's going to be the case if the donor under petitioner theory, that's the case if the donor is telling the hospital when he goes in for the surgery. No, no, no, no, no, no, no. Don't turn it into a bribe. It's a gratuity. It's after the fact. There's no agreement. So it would be whether the hospital knew that it was wrongful. Suppose there are internal emails and one, you know, one official says, you know, we really should be treating shouldn't be giving such special treatment to billionaires. And et cetera, et cetera. At the end of the day, Congress is entitled to draw the statutes and to make the bars the way it wants to. The reason, though, that I was pushing back and giving you the bribery hypothetical is that I really do think that what I'm hearing today is there are some payments that just aren't or some gifts that just aren't corrupt. And that's going to be true whether you're pursuing a bribery. How does anyone in the real world know the line put aside billionaires and hospitals deal with small gifts to teachers, doctors, police officers all the time? And one could make an argument if it if consciousness of wrongdoing doesn't mean consciousness of illegality, awareness of illegality, that means something more abstract than that. How does this statute give fair notice to anyone in the world as to and I hate to do it, but I'm going to the difference between the cheese factory and and in a in a little wash. Thank you. Thank you. How does anyone know? Again, Justice Gorsuch, I do not mean to suggest that if you are aware that you are violating the law, that's not going to establish conscious. No, no, no. Counsel, put that aside. We all you projected that as the definition of consciousness of wrongdoing, you say includes consciousness of either illegality, which I would have thought might mean wrongdoing, but I'm wrong. It can mean something more than that. It can mean a venal sin. It can mean a mortal sin. How does how does somebody who accepts the cheesecake factory know a trip to the cheesecake factory for nice treatment at the hospital, for treating my child well in school, for an arrest made? How does that person know whether that falls on the what you call the wrongfulness side of the equation or not? Well, certainly they can look at ethical guidance and guidelines. How about looking at state law? Counsel, how about like looking at state law? They could they could do that as well. And let's say it's all legal under state law. If it's all legal under state law, the government is not going to be able to prove consciousness of wrongdoing. Why not? Why not? We're going to have counsel, please. We're going to have internal emails, just like Justice Alito posited. Some people say, oh, I wouldn't go to the cheesecake factory. That would look bad, you know, or maybe you should go to the cheesecake factory, but not a little in Washington. Well, that's a lot of nice places to me. But you're going to have evidence and you can prove it. And the jury might well convict. Sure. And that's why the act also has to be wrongful. This is actually a protection justice court. So I think that maybe we're talking a little bit because what I'm trying to say here is that the government has to show that it's wrongful and the person's aware that it's wrongful. So if it's lawful under state law, then the defendant is going to be able to come in and say, no, look, this is lawful under state law. So it wasn't wrongful. The state obviously didn't think it was wrongful. And by the way, is that an automatic rule? Is that an automatic rule that is that a safe harbor? If it's lawful under state law or local law, then you cannot be federally prosecuted for the gratuity under the statute. If it's lawful under the governing rules that apply to the. In other words, it's not made unlawful. If it's not made unlawful by that, by the relevant state law or local law, is that an automatic, automatic safe harbor such that the federal government cannot prosecute under the statute? Yes, but I have to just for the sake of the public integrity unit, say that if a city mayor decided to change all the ethics rules to allow him to take billions of dollars in connection with contracting, then I don't think he could get it in. But otherwise, yes, we're not. So again, this is what I'm trying to say. The consciousness of wrongdoing isn't a trap to help the little town has no rules about gratuity. So you can't prosecute anybody in that town under six, six, six. No. So first of all, there would be state rules. Absolutely. There's going to be state rules. I took all right. There's no applicable. The state has left the regulation of gratuities to municipalities. And the particular town has got 3000 people, 2000 people, 1000 people. It has no rules about gratuities that police officers can accept. Look, if the police officer can come forward and say, I just had no idea this was wrongful, because there were no applicable rules. There was no applicable state law, then the government isn't going to be able to prove consciousness. The question was whether that's an automatic rule. And first he said it was and now an automatic safe harbor. Now I think No, I disagree. Let me distinguish between two things. One is a case where there are ethics rules that say this is permissible. Okay? If there are ethics rules that say this is permissible, if there are state laws that say this kind of gratuity is permissible, that is a safe harbor. I changed the language of the question then to say also, what if it's just to Justice Alito's not made unlawful? Ah, I see. Okay. So I think there, what's the answer there? Is that a safe harbor? It's not necessarily a safe harbor if it's obviously wrongful conduct. But I will say it's obviously wrong. So what's the jury instruction? Maybe this is a good way to say what is the exact wording of the jury instruction on corruptly in your view? So I think there's two different options. One is to isolate what is obviously wrongful in the case. I think this is a helpful way of seeing how it played out. Petitioner was not saying, oh, I didn't know it was wrongful to take a $13,000 payment. What the petitioner was saying is, oh, I wasn't taking a $13,000 reward. I was actually taking consulting fees. So the jury instructions here said what the jury has to find is that the petitioner understood that this was a reward. So that's what separated the wrongful from the innocent conduct. So that's one way of jury instructions to look at a particular case and just say, okay, what would make accepting $8 million for a hospital payment? Well, I don't think that gets you very far from the things where people have been talking about understood that this was a reward. I mean, they understand that the plate of cookies or whatever is a reward, but that doesn't mean that they should be facing the criminal exposure we're talking about. Yes. Pardon me. And we're not saying that if the government was somehow prosecuting a plate of cookies, this instruction would be sufficient. What I'm saying is that in most cases, there's actually no dispute about whether it would be wrongful to accept thousands of dollars in return for having done some official acts. The dispute is about, well, was it, was it a reward for doing that specific official act or was it something else entirely? You know, that it's, the government's not going to go after you for the plate of cookies, but I mean, you know, Al Capone went to jail for tax fraud, right? Not for killing however many people. And, you know, you were careful to make sure you weren't stepping on the toes of the public integrity unit, but I expect they have a different perspective on a lot of these things than others might. No, in terms of whether the reward. Maybe they can go after something that other people might regard as really sort of normal type of, uh, uh, say gratuity, you know, whether it's a Christmas gift, uh, for the, uh, for the trash collectors or something like that. No, I disagree. And they certainly couldn't in the seventh circuit. If you look at 41A, the seventh circuit said that accepting something corruptly is knowing that it's forbidden. So that this is all in the seventh circuit. Isn't that really the answer to Justice Kagan's hypothetical that sort of got, got us down this road. In other words, to the extent that we have an ordinary practice of, you know, unfortunate as it may be, um, you know, high profile, special, you know, people, billionaires who come to hospitals and it's sort of understood generally that the development office is going to be, uh, notified. And afterwards, um, that person might in fact be asked to, uh, give a donation to the hospital that sort of standard practice. So in a situation like that, I would think the government's position is that is not wrongful from the standpoint of corruption. We could not prove consciousness of wrongdoing related to anybody who's doing that sort of thing precisely because it's standard practice. But when you have a situation like this one, where it's not standard practice for a garbage, uh, a contract to be given to a particular company, and then the company that received that contract to pay out money, $13,000 for the officials who were involved, that doesn't happen very often. And so when we're in that world, then perhaps we do have a dispute about whether or not there was wrongful behavior, consciousness of wrongdoing, et cetera. But that's what separates all these other standard practice, the cookies, the gift cards, the whatever, that's normal practice. Unless it's a corrupt, uh, what if, what if it's a corrupt, like, sorry to pick them, you know, in Illinois or Chicago, but what if you're talking about some sort of local unit or a corrupt hospital where that actually is kind of corrupt practice that everyone would agree would be wrongdoing, not the donation to the hospital. Talk about something that's more unsavory. Maybe these rewards are just kind of accepted in this small town and, and, you know, you can't use that guideline that Justice Jackson is talking about, but what's standard because grafts could be standard or gratuities could be standard, even in unsavory cases. So the government has the burden of proof. They need to prove that somebody acted corruptly with consciousness of wrongdoing. I certainly agree with Justice Jackson that if a person knows that this kind of behavior is happening all the time, that's the evidence they're going to put in to make it very difficult for the government to meet their burden of proof. I take your point that the government might say, well, this is an obviously corrupt hospital, here's all the other evidence of that. Counsel, my head is spinning. I see the questions before us as twofold. Does the language of, of this 201C include a gratuity? It's very hard for me to think otherwise, because the language is pretty clear. So if it's clear that it includes gratuity, a lot of these questions have to do with what kind of gratuity. And that's where I think my colleagues are focused on what does the word unlawful. I think Justice Gorsuch said unlawful defined how. He would say under state law, I think. I don't want to be putting words into his mouth. But I think he would say unlawful by state law. But you want to broaden it. You want to say by ethical rules. But assume we, we put that aside. Can you live with, yes, it includes gratuities, but only if you define corruptly as being unlawful, the way that Anderson suggested it went a little more broadly. With the understanding of unlawfulness? Yes, absolutely. Let me answer that directly. Let me also say that I take your point. Rewarded, I think the reason we're talking about corruptly is because rewarded just very clearly does cover after the fax payments. There is no beforehand agreement requirement. And I think that to the extent there's a dispute about exactly how you would define corruptly, that isn't before the court because they did not object. I understand it's not before the court, but it really is. Because if we, if it's not defined that way, I think there's a sense of then gratuity has no meaning. That anyone that could, it would be so vague that it would be impossible. It would just be the provision that applies to federal officials in section 201C, which doesn't cut the corruptly. Yes, that's right. Thank you, counsel. Justice Alito. Well, I'm not sure I understood your most recent colloquy with Justice Sotomayor. You said that it would be that corruptly should or could reasonably be interpreted to mean unlawful under state law. Is that what you said? I said, I think she asked whether we could live with a definition. And I said that understanding that it was unlawful is a definition I think that certainly would be preferable to carving out gratuities from the statute altogether. So if something is not unlawful under state law, then it cannot be prosecuted as a gratuity under 666. If the person, the person needs to understand that what they're doing is wrong. I mean, this is why we do think it means more than that. It's really a simple, really, it's a simple question. Okay. Let me just be clear. Let me be clear. I can live with, as I said to Justice Sotomayor, that narrow definition. I do not think it is correct. So that's the distinction that I am trying to draw. But if the court is intent on saying we have the statute that Congress wrote that says you can't accept a payment intending to be rewarded, but it has to be corrupt. If the court thinks that what Congress wrote is not good enough, it's not protective enough of city officials, and we need to grasp the limit on, I would certainly rather you grasp on a limit that is still going to catch people who are, like the petitioner, taking large sums of money after they awarded a contract with every intent to get that large sums of money. I would certainly rather you accept, leave some room for that, as opposed to carving it out entirely. Okay. And just to summarize so I understand where you are, you think that corruptly means immoral, immoral or wrongful, and it requires knowing, the person must know that what is being done is immoral or wrongful. Know that it's forbidden. Again, I'm just, to be honest, I'm quoting Arthur Anderson. So I think if you're looking for my definition of corruptly. Just tell me what the definition is. Sure. So what Arthur Anderson said is that corrupt needs to be wrongful, evil, immoral, and a consciousness of wrongdoing. So that's it. That's what we're looking at. Okay. And where would one look to find the rules of wrongfulness and immorality that would be applied in that situation? Well, again, I think that the criminal laws are a great place to look. So where the conduct is obviously unlawful. You can also look at ethical codes and regulations if you're not sure whether something is obviously wrongful. None of this was litigated in this case, because again, there was no dispute that accepting a $13,000 payment for having granted a contract was wrongful. I think we understand that, but we didn't really take this case just to decide whether this case was correctly, this particular case was correctly decided. We took it to explore the meaning of this provision. Was the jury instruction here on corruptly correct? It was in the circumstances of this case, because there was no dispute about whether accepting a reward was wrongful, but Justice Alito, that is precisely what I'm trying to say. You do have to look at the circumstances because you have to isolate what was wrongful. And here there was no dispute that taking $13,000 as a payment for having granted a contract was wrongful. That's why Petitioner didn't object to the jury instruction. Is this the standard instruction that the gratuity cases? In the Seventh Circuit, this comes from the model jury instruction. I would say that in the prosecutions that I have seen, there just hasn't really been room to argue that the acceptance of the payment wasn't wrongful because what the government has been prosecuting is taking money and then doing everything that you can to cover up the fact that you took the money as a reward. And there it's pretty easy to show consciousness of wrongdoing, right? I think what you're all talking about is these fringe cases where, oh, it's not really clear because the person actually took it openly and notoriously. That's going to make it really hard for the government to show consciousness of wrongdoing. If we looked at the jury instructions in 50, 666 gratuity cases, what would we find on the question of corruptly? What would the jury be told? Here, what the jury was told is, am I right, page 28 of the Joint Appendix, a person acts corruptly when he acts with the understanding that something of value is to be offered or given to reward or influence as to gratuity to reward in connection with his official duties. I mean, all it has to be, the person has to know is that this is a reward. It doesn't have to be immoral, wrongful, or anything else. Again, that's in the circumstances of this case, there was no dispute. So I understand that. I understand that. I'm not, I don't want to talk about the circumstances. I want to talk about what the law means and what the government's position has been on the issue of corruptly in other cases. Is this standard? Or if we look at the others outside of the Seventh Circuit, corruptly is defined as immoral or wrongful. So the Second Circuit, I believe, has instructions that ask about a wrongful purpose. And of course, if the defendant thinks, look, I didn't know that taking this reward was wrong, then he can ask for an instruction saying, I had no decision, asking the jury to decide whether he understood that taking the reward was wrong. So there can be that express request. And this is just, I'm just sort of taking a page from Arthur Anderson on all of this. Corruptly is, I admit, a relatively unique, or a unique mens rea, but it's one with a rich historical pedigree. So it's not that the government is making up some new limit. It's not that Congress in 1986, when it was trying to eliminate innocuous gratuities, was doing something wild and crazy by saying, you know, we're going to use the corruptly mens rea because that is going to make sure that when people don't understand that what they're doing is wrongful, that when they're engaged in what everyone would reasonably think was just innocuous conduct, then they're not going to be prosecutable because the government just isn't going to be able to show that that was corruptly. Counsel? I'm sorry. Well, I am concerned about the breadth of, the breadth of your interpretation, and it all seems to rest on the understanding of corruptly. The person who gives a reward simply because that person is grateful may not know what the ethics rules are with respect to the recipient of this reward. So is that a defense? Certainly that that person could ask for a jury instruction saying they need to, there needs to be consciousness of wrongdoing, so they need to have understood that what they were doing was wrongful. These are sort of obscure ethics rules. They didn't, you know, the person could say, I didn't know about them. These are obscure ethics rules. How would anybody know, you know, $25, $50? And yes, then they're entitled to a jury instruction saying, no, there had to be a consciousness of wrong. I mean, we could think of lots of different hypotheticals and there are a lot in the briefs and a lot have occurred. I'll just give you one more and then I'll stop. So the owner of a, of a car dealership gets money during, as a result of COVID, enough money to qualify. And the owner is thankful to a firefighter for saving the life of his daughter. And so when that firefighter comes into, his car breaks down and wants a new car, but at that time people are lined up, the cars are in short supply and the dealer says, okay, well, you know what, for you, I'll put you at the top of the list. It's not a violation. If he does not have a consciousness of wrongdoing, that if he does not understand that what he is doing is wrong, I don't think the government, no, there's not going to be a conviction for that. Again, there's not going to be a conviction because the jury is going to be sympathetic to this fellow. No, because it's not going to fulfill the corruptly mens rea. Again, I want to be clear because I think we get, keep losing sight of this section 201 C bars for federal officials, just accepting gratuities. And it has no corruptly mens rea. The corruptly mens rea is a break. It's a break that Congress put in as an extra help to make sure that people who are bound by section 666 aren't going to be prosecuted for all of this innocuous conduct. So I think this idea that by putting in something to protect an extra protection for section 666, people covered by section 666, you could somehow render all the coverage of gratuities totally vague and unclear. I mean, that just can't be right. Thank you. Thank you, counsel. Justice Sotomayor. Counsel, you answered Justice Alito by saying the instruction here was correct, but I'm reading the Seventh Circuit opinion at page 580, and the court is talking about that it's recognizing the disparate penalties for gratuities between federal and state officers, and the difference is mitigated, this is the court's words, by the additional requirement in section 666 that the reward be paid or received corruptly. And it defined corruptly, i.e. with the knowledge that giving or receiving the reward is forbidden. That's right. All right. But that wasn't part of the charge here. At 418, no, because, again, the petitioner was not arguing. So the charge wasn't correct, it just was not, any error was not preserved. I mean, that's an issue that could be dealt with on remand, but what I would say is yes. I understand. Just answer my question. Yes, I am. All right, now stop. Okay. Assuming, if you go back below, if we say that, I'm not saying we're going to say it, that it doesn't, that 666 doesn't cover any kind of gratuity, what happens? Is this a reversal or a vacate and remand? It's a vacate and remand because the government was pursuing a bribery theory. As well? Yes. And so it was, we don't know what the acquittal went to, whether it went to the bribery or to the reward? Pardon me, it's a single offense, the corrupt acceptance offense, that can be committed through intending to be influenced or rewarded. Now, the district court actually found that there was sufficient evidence to convict purely on the quid pro quo. I remember that, yes. Okay. So, and if I don't disagree with that, then is there a retrial? No, we think that there would be, because the evidence was sufficient to convict on the bribery. That was... Again, that's our... All right, thank you, counsel. Justice Kagan? I think I've got your view of corruptly, but if you put that aside, are there any safe harbors in this statute? And just like, if you would list for me the safe harbors that the government thinks exists, either on the face of this statute or in the way you're prosecuting this statute, just give me a list. Sure. So the safe harbors that come from the text, so this isn't a sort of trespass argument, that has to be in connection with business or transactions worth $5,000. Got it. $5,000. That's the sun diamonds. There has to be the nexus. That's going to kick out a whole bunch of innocuous conduct, more even than... Let's just list them. Just list them. Okay. So the corruptly mentored nexus requirement, the $5,000 floor, and the express exception for bonafide salary and compensation in the ordinary course of business. Anything else? Well, and pardon me, and then the First Amendment protection that says that under McCormick, we understand that to mean that there really has to be an express quid pro quo when we're dealing with a bonafide campaign contribution. Nothing else that the government can say. We realize that this doesn't appear in the text of the statute, like if you just read it, but we never prosecute X, Y, or Z. I mean, you've told me to sort of set aside corruptly, and I think that's where a lot of comes in. But for example, the government does not prosecute pure charitable contributions. Sometimes charitable contributions are used as a funnel, so it's just sort of like you pay into the charity, and then that goes right into the person's pocket. But the government doesn't prosecute just a pure charitable contribution. If you actually look at the facts of the cases that they're citing, I think one of them is from the local 150, that's the Doniger prosecution. There's actually thousands and thousands of dollars of payments of all different kinds. That's actually on Westlaw. You can look at the facts. They're quite dramatic. So that's not just pure charitable contributions. Similarly, I think they refer to a building inspector case. In that case, somebody was giving, the building inspector was giving permits and then getting, again, large amounts of money from developers having given them that permit. So I think we had $240,000 loan, $30,000, the person just got to keep Scott free. So I guess I'm kind of trying to give you a picture of the sort of prosecutions, which I guess I'm not kind of including in here the kind of apple for teacher and the hypotheticals that you see in petitioners' briefs. They're just not even on the radar of the government. So I think those are just, what we're looking for is, again, corrupt acceptance of a payment with the intent to be rewarded in connection with business or transactions worth at least $5,000. And when we're talking about all these hypotheticals, they just, in the government's view, I think in any court's view, in any jury's view, they just don't fall into that. Okay. Thank you. Justice Gorsuch, counsel, you, in your brief, make the point that we have to interpret rewarded your way rather than your friend's way because otherwise we're going to have a superfluity problem. In a case we're going to hear in a couple of days, the government makes the opposite argument and says that, I think it says, overlap is not uncommon in criminal statutes. And therefore, superfluity doesn't come into play. Which is it? So I think that certainly sometimes there is superfluity in a statute. There's thousands of offenders. The reason not here, Justice Gorsuch. Why does it matter here, but it doesn't two days from now? So the reason that it matters in this case, and I can't, of course, speak for other cases, but the reason it matters is that, well, because I'm here about this case. So the reason is that- You represent the government of the United States, which I would hope would take consistent positions across cases. And we have- So counsel- Let me explain to you why we are. Thank you. So Congress added the term, added intended to be influenced or rewarded in 1986. So they're tracking section 201B. They clearly were trying to add something to cover more, to cover additional material. So there, when we have section 201B, which would be the example of what you would do if you wanted to cover only the type of quid pro quo bribery that petitioner is talking about, they have that, but they didn't just take 201B and plop it into section 666. I got it. Instead, they added rewarded. I got it. Okay. And earlier this term, the government argued that it would defy common sense for Congress not to have required more serious sentences for more serious crimes in Pulsifer. And that argument prevailed. Here, you're suggesting that it makes sense for the more serious offense of bribery and the lesser offense of receiving a gratuity to receive the same punishment. Can you reconcile that one for me? Of course, the government looks first to the text, and we know that the text here says that the 10-year penalty, it did in 1984 when petitioner acknowledges that it undisputedly covered gratuities. But I can give you a historical reason why I think we have that, you know, the two years under 1962 and the 10-year maximum. That wasn't my question, is why would both bribery and receipt of a gratuity have the same 10-year sentence here? And we should ignore that, but we were supposed to take cognizance of that kind of issue just last month. Because Section 666 was enacted as part of the 1984 Crime Control Act, which also enacted the sentencing guidelines. And so Congress was moving from a situation where, as it had in 201, it was specifying specific sentences for specific types of breaking of the law. So there's 201B, it had the two-year maximum for that. In 1984, Congress is doing sentencing guidelines, so it's saying, we're going to have a maximum, but we're not going to worry about that because we're going to have mandatory guidelines that are going to take care of this. And then, in fact, if you look, Section 666 is listed under the 10-year guidelines. Well, the mandatory guidelines argument was the same point that was made in Pulsifer, and you said that wasn't enough there. So just to finish my point, if you look at the guidelines, there is a gratuity guideline that applies to Section 666. There is a bribery guideline that applies to Section 666. Under the gratuity guidelines, people are not getting more than two-year sentences, and Petitioner hasn't pointed to anywhere that has happened. Okay. Last one, and this is circling back to Justice Kagan, and, again, put aside the question about corruptly. It seems to me that the major safeguard that you pointed to in that discussion was the $5,000 threshold. Is that right? The $10,000 threshold and the $5,000 threshold? I think the bona fide salary exception is pretty important. Okay. Got that. Okay. With respect to those thresholds, the government seems to have argued that they're satisfied pretty easily. In connection with business of an organization, governments argue that we can take account of the salary of police officers, which are obviously more than $5,000. So because the police department receives $10,000 and the police department receives $5,000, the $5,000 threshold of any value would seem to qualify. What am I missing there? No, that's not quite right. So I think you're talking about the case in which there was a drug dealer who was giving, I think, $1,000. I mean, that is the case. That's the case where the Seventh Circuit said that $5,000 is satisfied by the police officer's salary. That's true. Right. And the reason was because they were counting up how many salary hours the police at a hospital does more than $5,000 worth of work on behalf of a patient or a teacher spends more than $5,000 worth of time with a student, then that threshold would be satisfied in the government's view. Where the specific transaction in business is worth more than $5,000, yes. Okay. Thank you. Justice Kavanaugh? You've said several times, I think, that some gratuities, some thank yous should be prescribed, either because of the appearance problem they present, government officials getting payments like that, or because they're suggestive of something more nefarious that might also be going on with respect to the government official. And there's widespread agreement on that, I think, and I certainly do as well agree on that. I think there are two issues here you need to deal with, though, and I'm going to come back to them. One is we're talking about state and local officials who might have different state and local rules than what the federal government's going to come in and superimpose on them. The second issue is the word corruptly. And you said, I think, that the word corruptly was a break on an otherwise broad statute, and so it's a good thing here, right? And I accept that, but the problem is the word corruptly then creates enormous uncertainty and vagueness about where the line is drawn. And so when you have state and local officials who have one set of rules they think they're following, coupled with a vague federal line that they have no idea where that's drawn, and it's up to 10 years in prison, that's a problem. So I think to alleviate that concern, it is consciousness of wrongdoing. So if there's uncertainty about whether accepting that reward is wrongful, the government isn't going to be able to prove that the person had this consciousness of wrongdoing. Well, you nicely anticipated my next question, which is to drill down again, and you did with Justice Sotomayor on wrongful and Justice Gorsuch as well. I think it's your backup position. I think you said you could live with it, but I'm going to make sure I've got it. An instruction that says you're only guilty under this statute, paraphrasing, if the conduct was unlawful under state or local law. Can I live with that? Oh, they're over cutting out fortuities entirely? I mean, yes, I'm going to take the narrower statutory surgery. And knew that it was unlawful, because you've said consciousness of wrongdoing. So consciousness of illegality. In other words, the statute would be narrowed to a situation where it was unlawful under state or local law, and you knew it was unlawful under state or local law to take that gratuity. That's your, I mean. Yes, yes. That's better from your perspective. That's absolutely better. I think it might be worse for some defendants where the state or local law has some ticky that they just couldn't possibly have known was really wrongful. So I think this is actually less protective in some ways. But I'm certainly willing to live with it. Well, that may indicate that even the backup position is no good. But that's a. No, I don't. I don't think so. You're arguing against yourself there a little. No, I don't think so. Again, the very worst is, I think what you could be saying is that, you know, we know that gratuities are barred under Section 201C with no corruptly meant raya. I mean, if you think that corruption can't be adding anything. So Section 201C. That lends to the clarity point. I mean, it's clear there. But here, when you put corruptly in now, you don't know where the line is. You don't know if the concert tickets, the game tickets, the gift card to Starbucks, whatever, where's the line. And so there's vagueness that creates the problem that. No, I disagree. And you say this is my last question. You said these fringe cases as compared to this case. I think the, quote, fringe cases are the everyday concern. Again, there's a requirement of consciousness of wrongdoing. So if the person couldn't know that this behavior was wrongful because it was unclear, because there are some line drawing difficulties, because some people think this is wrong and some people think it's right, then the government isn't going to be able to meet its burden of proof. So it's not introducing. You're sitting in a criminal courtroom after, you know, you're a regular police officer or a local official. You've depleted your money to defend yourself. You've lost your job because you're prosecuted. It's like, oh, well, the good news is they won't be able to meet the burden of proof because some people thought it was OK to do this. No, I mean, prosecutors have a responsibility not to bring prosecutions that don't meet the statute. And what I'm saying is that the statute prevents that kind of prosecution. So it's what Congress said. We don't want to reach innocuous conduct. We want to make sure we are going to put in a mens rea that makes sure that you understand that what you're doing is wrongful and you do it anyway. That's the nature of this mens rea. It's a break. Thank you. Justice Barrett. OK, so I'm increasingly worried about the scope of the government's position. I'd like you to tell me how your backup position that you were just talking about with Justice Kavanaugh works for the private university or the private hospital employee that Justice Kagan was pointing out satisfies the grant amount. And I'll say, as Justice Gorsuch pointed out, I don't think that the nexus requirements or the $5,000 requirement does a whole lot of work. And for the surgery, the employee's time, or the police officer's time working your case, or the professor's time spending, trust me, tutoring is expensive. I've paid a lot of tutoring bills. The professor spending all this extra time outside of class. So if state and local laws, I mean, I assume you're encompassing ethics rules for state and local government employees in your answer to Justice Kavanaugh? Yes. So how does that cash out for the private people? So if it's acceptable under those rules, I think it's a safe harbor is what we've been discussing. Right. But I'm saying that these ethics rules aren't going to apply in the private context to the car dealer, the private university, the private hospital that swept in because of the federal funds. Oh, I don't think that's really necessarily true. I think many entities like hospitals, research institutions, the entities that are actually being covered here, they do have ethics rules. So there is going to be something to look at. But also that they can certainly. But not the state. I guess let me just pin you down. I'm not saying that they won't have ethics rules. The hospitals, the universities, et cetera, they're going to have ethics rules. I don't know about the car dealerships. But what I'm saying is if state and local government rules don't apply to them, where do you look for your backup position? Is it like, you know, the university ethics rules, the hospital ethics rules? I think where I look is whether they had, you know, I think the easiest thing is whether there would be concrete evidence that this was wrongful. So yes, if their entities rules barred the thing, then I think that's going to be pretty good evidence. If it's unclear, though, Justice Barrett, I just want to again tell you that there has to be a consciousness of wrongdoing. So if there just was nowhere they could look and there was no way for them to know that taking the cashmere blanket for the tutoring was wrongful, then the government can't show consciousness of wrongdoing and it can't prosecute in that case. Can't show it? So you're kind of sliding, I guess, into the not backup position, but the immoral or this is unsavory or this is wrong. No, they need to show that the person understood that what they were doing was wrongful. So if the government cannot show that what the person understood what they were doing was wrongful with against the law is the easiest way to show that. But if they don't have any laws to point to, if they don't just don't have any anything that they can point to, then they're not going to be able to prove that the person would know, would understand that what they're doing is wrongful. But under your first order position, there wouldn't be anything to point to, right? Because I thought your first order position, like your backup is if it's prescribed by law. But I thought your first order position was if it's wrong, if it's immoral, if people would know this is corrupt. So our position is just just let me be clear. It's that the act has to be wrongful and the person has to have consciousness of wrongdoing. That requirement of consciousness of wrongdoing. We recognize that that's not a backup position. That's a no, no, no. I know. I know. But I'm saying like you said, if the person doesn't have any place to look to know that it's wrongful. And I'm saying that I thought your first order position was that they don't have a specific place to look because you should know it's immoral. You should know it's wrong. I think that the government can certainly I think it's going the government has to say this is something that is so obviously wrongful that everyone would know. And I would say that in the circumstances you're pointing to, the government isn't going to take that position. They're not going to be able to say that just because you know that it has to be obviously wrongful because what they're saying is we don't have evidence to demonstrate that this specific person knew that what they were doing was wrongful. But this is something that is just so obviously inherently unlawful or unwrongful. Sorry, not unlawful. I don't want to confuse things. Inherently wrongful that the person would be bound to know. And I agree with you that when it's something that is either permitted by ethics rules or it's just never governed by ethics rules, this isn't something that people even think about in the ethics world maybe because cookies are just so obvious. Then there's just the government that there isn't going to be that consciousness of wrongdoing. The government isn't going to be able to show and therefore the statute does not cover that person because they do not understand that it is wrongful. Justice Jackson? I guess I'm just totally confused in a lot of ways because I had understood this case to be about a totally different part of the statute. So what I mean is that suddenly it seems as though it's becoming a vehicle to investigate the corruptly solicits or demands element as opposed to the influenced or rewarded element. And I read the question presented to be about reward. Like what does reward mean? You know, the petitioner's statement of the question presented is whether 666 criminalizes gratuities without any quid pro quo agreement to take those actions. So I thought we were looking at reward and determining whether or not you needed a quid pro quo. But it sounds like there's a lot of concern about the corruptly element. So can I ask you, do we need to take a position on corruptly here to rule in your favor on the question presented in this case? No, to rule in our favor you just have to look and say that rewarded obviously encompasses rewards that are accepted without a beforehand agreement. All right. And if we were going to think about corruptly, I guess I'm trying to understand how this case on these facts even really presents that issue. I mean, I understand all of these hypotheticals about the blankets and the Starbucks and the, you know, the gray areas around where people could say, is this person really acting corruptly? But was there a dispute in this case that it was corrupt for this official to, if he was taking a reward to receive the $13,000 under these circumstances? No. And that's generally the way these cases go. It's not someone saying, I took a reward, but I thought it wasn't wrongful. So it's not someone disputing the consciousness of wrongdoing point. It's someone saying, I wasn't taking a reward. I was taking something for being friends. And that's how that came up here. So that's why in response to Justice Sotomayor, this wasn't a question that was put to the jury about, like, this is why it's not in the jury instructions, this question of what is the definition of corruptly? Because he essentially conceded that element for the purpose of this case. Right. He did not challenge the jury instructions on corruptly, even though the district court had already rejected the request to narrow the statute to gratuities. So it's not true that he didn't protest the corruptly definition because he was trying to get at it in a different way, right? The district court had already said gratuities are going to come in. He doesn't contest the corruptly jury instruction here because he wasn't saying it's rightful. Right. He wasn't in the gray area scenario where people could say, well, I thought this was right. He wasn't doing that. All right. So final question. With respect to the question I asked Ms. Black, if we hold constant the corruptly aspect of this, the demand aspect of this, we assume that's all met. And now we're really just focusing on reward, intended to be influenced or rewarded. Can you articulate why Congress would not have wanted rewarded to include these gratuities? In other words, it seems as though that element is equating bribes, quid pro quo bribes with rewards, what I'm thinking of as gratuities in this context. If we agree with Petitioner, it sounds as though Congress would have wanted to prohibit one and not the other. And I can't figure out why that would be. I can't either, because again, gratuities have long been recognized to be as corrupt as rewards in many circumstances. We have the bar on gratuities in our constitution itself. We have Blackstone saying that the acceptance of gratuities is corrupt and that the Romans were wrong to permit it. We have Congress barring not just bribery, but also the acceptance of gratuities without the corruptly mens rea in section 201. So there's just no reason. And that's not because Congress was like an overly moral being in this respect. It's because it's the same harm. If there's a beforehand agreement in this case, it doesn't change anything, because it's crystal clear that what the Petitioner was doing was taking a public act intending to get that reward. And whether there's a beforehand agreement or not, the harm is, instead of doing the public acts for the public good, he's doing the public acts for his own, to line his own pocket. Thank you. Thank you, counsel. Rebuttal, Ms. Black. Thank you, Mr. Chief Justice. I mean, at least we should get a 9-0 remand because everything that we heard today was not charged to the jury. It is truly, as a former government lawyer, baffling how someone could just say that it was not contested, that this was wrongful. No citation. Of course it was contested. The whole argument was this was a legitimate consulting agreement because local officials don't make any money. And just because the government says it, an argument, doesn't make it true, especially when they don't have a citation. There was no jury instruction. And then at times I feel like we're in a Senate room drafting language. She literally said, here's what the guidelines are going to look like going forward. What we're going to do is we're going to isolate wrongfulness. We're going to talk about if it appears for public sale, on and on and on. And then she said consciousness of wrongdoing 36 times. Consciousness of wrongdoing has never appeared. And here's where, if we're going to look at text, guess what? Corruptly applies to bribery. It has to mean the same thing. Corruptly, as in consciousness of wrongdoing, has never been the mens rea for bribery. And so now every single prosecution for bribery, I guess the defendant is entitled to an instruction. I didn't know what I was doing was wrongful. I didn't know it was unlawful. My hospital said I could do this. No. She wants a separate rule for corruptly. And to say that it's not part of the case is absurd. Corruptly means quid pro quo. Intending to be influenced and intending to be rewarded are parts of that quid pro quo. The other thing I just want to get to, and Justice Kavanaugh got on this. There is a statute that the statute applies to accepting. It also applies to anyone who gives. That's 666A2. So 300 million Americans are covered by this. Anyone who gives a gift commits a crime if it's corrupt. Now, that consciousness of wrongdoing has to apply to the person who goes to the car dealership or to the billionaire or the poor person who wants to give a toy truck. And then she said, well, I guess it's standard practice and you have to ask for it and be for sale. You see something, you say, you know, I like your water bottle. It's got that nice little Apple logo. Here, take it. Gratuity. You just give your job away for sale. You literally said, you know, you want it, you can have it, or they asked for it. I mean, this is preposterous that this would go into inherently wrongful. I still can't figure out what about escort services? That seems not standard practice to give that to your university admissions. But maybe a plaque would be or maybe a crystal would be. There's just, there's literally no guidance here. And the real irony is at least the banking officials would have more guidance. It's just kind of made up as like, it sounds like at Moot Court, they worked this out because it would sound good. The stuff on the lesser included and greater greater included was gibberish. It is a recognized in government manuals that this is a greater included offense. And she said, well, it only applies to demand. But the statute says demand or agrees to accept. So if you agree to accept something, you don't have to demand. That's clearly a bribery. There is no set of circumstances where if you proved a reward, you would ever need to prove a bribery. And that's why the government manual says, go for both. All you need to do is prove one and you at least get, at least in the federal officials, a two year conviction. Here you get a 10 year conviction. The government sought six years here. We showed examples where they prosecuted for four years. And the other thing in terms of the line drawing, I don't know why can I get a ride in the Uber would not count. Because that's asking for, you know, part of part of a value in this definition of consciousness of wrongdoing. I don't think it gives anybody any guidance whatsoever about what happens day in and day out. So at least we get a remand and Justice Sotomayor on the harmless error under Nader. I'm not sure why she said evidence deficiency. The standard is beyond a reasonable doubt. They'd have to show the jury instruction. And so there would have to be overwhelming evidence of bribery. And so that would have to be worked on a remand. But none of this was in the jury instruction. It was adequately yelling to the top of the roof that this could only apply to gratuity, i.e. gratuities were not wrongful. Thank you. Thank you, counsel. The case is submitted.